UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BOBBIEJO STANLEY, on behalf of D.M.S.,

             Plaintiff,

        V.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

**REPORT AND
RECOMMENDATION**

11-CV-1226
(NAM/VEB)

## I. INTRODUCTION

In March of 2008, Plaintiff BobbieJo Stanley filed an application for Supplemental

Security Income ("SSI") benefits under the Social Security Act on behalf of her son, D.M.S.

("Claimant"),[1] alleging disability due attention deficit hyperactivity disorder ("ADHD"),

oppositional defiant disorder ("ODD"), and a learning disorder. The Commissioner of Social

Security denied the application.

Plaintiff, through her attorney, Steven R. Dolson, Esq., commenced this action

seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§

405 (g) and 1383 (c)(3).

On October 12, 2012, the Honorable Gary L. Sharpe, Chief United States District

Judge, referred this case to the undersigned for a Report and Recommendation pursuant

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

_____

[1]D.M.S. is a minor child. Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil
Procedure, he wll be referred to as "Claimant" in this Report and Recommendation.

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff is the mother and guardian of Claimant, a minor child. On March 28, 2008, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning October 17, 2006. (T at 77-83, 85, 88).[2] The application was denied initially and Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). On March 26, 2009, a hearing was held in Utica, New York before ALJ Zachary Weiss. (T at 10). Claimant's father (David Stanley, Sr.) appeared at the hearing with Attorney Dolson and testified.[3] (T at 29-34).

On May 10, 2010, ALJ Weiss issued a written decision denying the application for benefits and finding that Claimant was not disabled within the meaning of the Social Security Act. (T at 10-21). The ALJ's decision became the Commissioner's final decision on August 11, 2011, when the Social Security Appeals Council denied Plaintiff's request for review. (T at 1-3).

On October 12, 2011, Plaintiff, acting on Claimant's behalf and with counsel, timely commenced this action by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). The Commissioner interposed an Answer on January 26, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on March 9, 2012. (Docket No. 10). The Commissioner filed a Brief in opposition on April 23, 2012. (Docket No. 13).

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 8)

[3]Plaintiff and Claimant were also present, but did not testify. (T at 27).

Pursuant to General Order No. 18, as issued by the Chief District Judge of the Northern District of New York, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons set forth below, it is recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for the calculation of benefits.

## III. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than

one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20

C.F.R. § 416.924; <u>Kittles v. Barnhart</u>, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); <u>Ramos v. Barnhart</u>, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); <u>Kittles</u>, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); <u>Kittles</u>, 245 F.Supp.2d at 488; <u>Ramos</u>, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). <u>Id</u>. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); <u>Kittles</u>, 245 F.Supp.2d at 488; <u>Ramos</u>, 2003 WL 21032012, at *7. If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); <u>Ramos</u>, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); <u>Ramos</u>,

2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

**B.      Analysis**

**1.      Commissioner's Decision**

The ALJ noted that Claimant was born on October 19, 2001, and was therefore a "school-age child," as defined pursuant to 20 CFR § 416.926a(g)(2), on March 28, 2008 (the date the application for benefits was filed) and as of May 10, 2010 (the date of the ALJ's decision). (T at 13).  The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision. He further determined that Claimant had the following impairments: ADHD, ODD, and a learning disorder, which the ALJ recognized as "severe" impairments under the Social Security Act. (T at 13).

The ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix I (the "Listings").  (T at 13).  The ALJ also concluded that Claimant did not have an impairment or combination of impairments that functionally equaled one or more of the impairments set forth in the Listings. (T at 13-20).

As such, the ALJ found that Claimant had not been disabled, as defined under the Social Security Act, from the date the application for benefits was filed to the date of the ALJ's decision.  (T at 20).  As noted above, the ALJ's decision became the Commissioner's final decision on August 11, 2011, when the Appeals Council denied Plaintiff's request for review.  (T at 1-3).

**2.      Functional Equivalence Analysis**

As outlined above, if a child claimant's impairments do not meet or medically equal one of the impairments set forth in the Listings, the Commissioner must determine whether

the impairment or combination of impairments are functionally equivalent to a Listing. Analysis of functionality is informed by consideration of how a claimant functions in six (6) main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1).

In the present case, the ALJ determined that Claimant had: (1) a less than marked limitation in acquiring and using information; (2) less than marked limitation with regard to attending to and completing tasks; (3) less than marked limitation with respect to interacting with and relating to others; (4) less than marked limitation in moving about and manipulating objects; (5) no limitation in the ability to care for himself; and (6) no limitation with regard to health and physical well-being. (T at 16-20).

Plaintiff argues that the ALJ should have adopted the assessment of Dr. Michael Kore, Claimant's treating physician. In a report prepared in April of 2010, Dr. Kore noted a diagnosis of ADHD and assessed (1) moderate limitation with respect to acquiring and using information, (2) marked limitation as to attending and completing tasks, and (3) moderate limitation as to interacting and relating with others. (T at 297). Dr. Kore declined to provide an opinion regarding the domains of moving about and manipulating objects or caring for self, characterizing Claimant's limitations as to these domains as "unknown." (T at 297). With regard to the domain of health and physical well-being, Dr. Kore indicated both "no limitation" and a "marked limitation." (T at 297-98).[4]

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

---

[4]This inconsistency is discussed further below.

substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In the present case, the ALJ did not even mention Dr. Kore's April 2010 assessment. The Commissioner recognizes this omission (Docket No. 13, at p. 12), but argues that the ALJ's decision was nevertheless supported by substantial evidence. For the following reasons, the Commissioner's argument is unpersuasive and the ALJ's functional equivalence assessment is not supported by substantial evidence. Indeed, the evidence clearly demonstrates that Claimant has a marked limitation in at least two of the domains.

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

### i.     Acquiring and Using Information

This domain considers the child's ability to acquire or learn information and how well the child uses the information she has learned. 20 C.F.R. § 416.926a(g). A school-age child (*i.e.* at least six, younger than twelve) should be able to read, write, perform math, and discuss history and science. The child should be able to demonstrate these skills both in academic situations and in daily living. 20 C.F.R. § 416.926a(g)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she does not demonstrate understanding of words about space, size, or time; cannot rhyme words or the sounds in words; has difficulty recalling information learned in school the previous day; has difficulty solving mathematical problems; and/or talks in short, simple sentences and his difficulty explaining what he or she means. 20 C.F.R. § 416.926a(g)(3).

In the present case, the ALJ found less than a marked limitation with regard to this domain, but did not cite any evidence in support of his conclusion. (T at 17). As noted above, Dr. Kore, the treating physician, assessed a moderate limitation in this domain. (T at 297). In addition, the ALJ's finding was contradicted by a teacher questionnaire completed by Karen Williams, Claimant's second grade teacher, in April of 2010. Ms. Williams's opinion was entitled to significant weight in that she interacted with Claimant during the school day over a seven month period (T at 143).

With regard to acquiring and using information, Ms. Williams indicated that Claimant had "serious" problems comprehending oral instructions, reading and comprehending written material, comprehending and doing math problems, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new

material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (T at 144). Ms. Williams noted an "obvious" problem with regard to understanding school and content vocabulary. (T at 144). She described Claimant as an "inconsistent learner" with "weak written language skills" and "weak deductive reasoning." (T at 144).

A questionnaire completed by Ms. Palmisano, Claimant's first grade teacher, in April of 2008, contained similar findings, with Claimant described as having "very serious" problems reading and comprehending written material, comprehending and doing math problems, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (T at 117).

The ALJ referenced the teachers' questionnaires in his general review of the evidence (T at 14-15), but failed to explain how he reconciled there findings with his conclusion that Claimant had a less than marked limitation in this domain. This omission was significant in that the teachers were the disinterested parties with the best first-hand opportunity to observe Claimant's abilities and limitations over an extended period. Moreover, there is no indication that the ALJ accounted for the impact of a structured setting on Claimant's limitations.

The "Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." Smith v. Massanari, No. 00-CV-0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar.

17, 2002) (citing 20 C.F.R. § 416.924c);[6] see also Straw v. Apfel, No. 98 Civ. 5089, 2001 WL 406184, at *6 (S.D.N.Y. Apr. 20, 2001).

Here, both teachers noted that Claimant required 1:1 support to complete projects (T at 117, 144). They described very serious and pervasive limitations, notwithstanding the fact that Claimant was provided with support in relatively small (18:1 and 16:1 student:teacher ratios) class settings. (T at 117, 143). Ms. Palmisano stated that Claimant was "unable to complete first grade work without assistance." (T at 117). During second grade, Claimant was provided with extensive remedial help, including a weekly forty-minute after-school review session. (T at 144). The Individualized Education Program ("IEP") for the 2008-2009 school year described Claimant as having "academic difficulties" that "warrant[ed] much individualized attention." (T at 293).

Claimant's demonstrated need for intensive support and the persistence of serious problems in this domain even in structured settings indicates a marked limitation. Cf. Williams ex rel. D.A.W. v. Astrue, No. 08 Civ. 6375(LBS), 2009 WL 3754391, at *9 (S.D.N.Y. Nov. 5, 2009) (noting that "[i]mprovement[s] based on a structured special education environment and the efforts of teachers and therapists is insufficient to support a finding that [the claimant's] limitations are not marked").

_____

[6]Section 416.924a (b)(5)(iv)(C) of the Social Security Regulations provides that:

A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

The report provided by Dr. Kristen Barry, a consultative examiner, provides further support for a finding of at least a marked limitation in this domain. Dr. Barry diagnosed a learning disorder and borderline intellectual functioning and recommended evaluation for alternative educational placement. (T at 186). She opined that Claimant would have "some difficulty" following and understanding age-appropriate directions and instructions and completing age-appropriate tasks." (T at 185).

The ALJ afforded "significant weight" to the opinion of Dr. Sharon Grand, a non-examining review consultant. (T at 16). Dr. Grand assessed a less than marked limitation in the domain of acquiring and using information. (T at 288). However, the ALJ did not justify his decision to afford greater weight to this non-examining consultant than was given to the reports provided by Claimant's teachers, who had extensive, first-hand opportunities to observe Claimant and assess his limitations. Likewise, the ALJ did not even discuss, let alone reconcile, Dr. Grand's findings with the treating physician's April 2010 assessment. This omission was significant because the treating physician's opinion conflicted with the ALJ's conclusion that Claimant suffered from a less than marked limitation in this domain. "While the ALJ is not required to reconcile every shred of evidence, the ALJ must acknowledge relevant evidence and explain his rejection of such evidence." Walker ex rel. J.B. v. Astrue, 06–CV–1180 (NAM), 2010 WL 2287566, at *15 (N.D.N.Y. June 3, 2010).

The reference to Dr. Grand's assessment cannot, without more, constitute substantial evidence that justifies disregarding the treating physician's opinion. See Garzona v. Apfel, No. 96 CV 6249, 1998 WL 643645, at *1 (E.D.N.Y. Sep. 18, 1998)(noting that "the opinion of a non-examining consultative physician, without more, [is] insufficient

to constitute the requisite contrary substantial evidence" to override the treating physician's assessment).

Here, the ALJ's finding of less than a marked limitation is not supported by substantial evidence. Indeed, the record evidence (including educational records and assessments by the treating physician and consultative examiner) clearly demonstrate the existence of a marked limitation in the domain of acquiring and using information.

### ii.    Attending and Completing Tasks

In this domain, the Commissioner considers the claimant child's ability "to focus and maintain . . . attention," and how well he or she can "begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h).

A school-age child is expected to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in work (beyond what would be expected in other children of like age who do not have impairments). The child should be able to change activities or routines without distracting himself/herself or others, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read independently, and complete family chores. The child should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. 20 C.F.R. §416.926a (h)(2)(iv).

In the present case, the ALJ concluded that Claimant had less than a marked limitation with regard to this domain. (T at 17). Again, the ALJ did not cite any evidence in this portion of his decision and it appears he relied heavily (and perhaps exclusively) on the report of Dr. Grand, the non-examining consultant, who opined that Claimant had less than a marked limitation in this domain. (T at 288). The ALJ's conclusion is not supported by substantial evidence.

Dr. Kore, the treating physician, assessed a marked limitation in this domain (T at 297), an opinion the ALJ failed to discuss or reconcile with his assessment. Ms. Williams, Claimant's second grade teacher, noted "very serious" problems organizing school materials, completing class/homework assessments, and completing work accurately without careless mistakes. (T at 145). She also noted "serious" problems with carrying out instructions (both single and multi-step) and "obvious" problems focusing long enough to finish an assigned activity or task, and refocusing to task when necessary. (T at 145).

Ms. Palmisano (the first grade teacher) reported "very serious" problems completing work accurately without careless mistakes and working at a reasonable pace/finishing on time. (T at 115). She indicated "serious" problems carrying out multi-step instructions and completing class/homework assignments. (T at 115).

Once again, both teachers noted Claimant's need for direct instruction. (T at 115, 145). Ms. Palmisano reported that Claimant "consistently" needed "one on one direction in order to successfully complete an activity." (T at 115). Ms. Williams indicated that Claimant was seated in the front of the class so that she could monitor his work. (T at 145). As discussed above, the persistence of Claimant's limitations in structured settings and his need for intensive support to maintain attention and concentration strongly indicate a

15

marked limitation in this domain.

A questionnaire completed by "A. Campbell," Claimant's remedial reading teacher, in January of 2008, indicated that Claimant "very often" failed to give attention to details, had difficulty sustaining attention to tasks or activities, and was easily distracted. (T at 266). The 2008-2009 IEP noted that Claimant required "much individualized attention" to ensure that he maintained attention to academic tasks. (T at 293). Per the IEP, tests were to be administered to Claimant in a small group and separate located to increase his attention to task. (T at 206). Dr. Barry opined that Claimant could "attend to task with structure in place." (T at 185).

Again, the ALJ did not adequately reconcile his finding of a less than marked limitation in this domain with the assessments provided by the treating physician and educators. Those assessments, which should have been afforded controlling weight, establish at least a marked limitation as to this domain.

### iii. Interacting and Relating with Others

With regard to the domain of interacting and relating with others, the Commissioner considers the claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).

A school-age child is expected to develop more lasting friendships with children who are his or her own age. The child should begin to understand how to work in groups to create projects and solve problems. The child should demonstrate an increasing ability to understand another's point of view and to tolerate differences. The child should be well able

16

to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R. § 416.926a(i)(2)(iv).

Examples of limitation functioning in this domain are: lack of close friends, avoidance or withdrawal, overanxiousness or fear of meeting new people or trying new experiences, difficulty playing games or sports with rules, and difficulty communicating with others. 20 C.F.R. § 416.926a(i)(3).

The ALJ found less than a marked limitation with respect to Claimant's ability to interact and relate with others. (T at 18). Once again, the ALJ did not cite any evidence in this portion of his decision and appears to have relied heavily on Dr. Grand's conclusion that Claimant had a "less than marked" limitation in this domain. (T at 288). However, Dr. Grand's opinion was contracted by Dr. Kore, who assessed a moderate limitation. (T at 297). The 2008-2009 IEP indicated that Claimant "plays well with others," but had "difficulty forming sequential sentences that make sense to those he is interacting with." (T at 210)

As noted above, examples of limitation functioning in this domain are: lack of close friends, avoidance  or withdrawal, and difficulty communicating with others. 20 C.F.R. § 416.926a(i)(3). Claimant's educators noted that he had obvious problems making and keeping friends and communicating with others.  Specifically, Ms. Williams reported "obvious" problems making and keeping friends, using language appropriate to the situation and listener, relating experiences and telling stories, introducing and maintaining relevant and appropriate topics of conversation, taking turns in a conversation, interpreting body language, and using adequate vocabulary and grammar to express thoughts and ideas in general conversation. (T at 146).  She indicated that Claimant "does not seem very happy" and had "limited interaction with peers," with some improvement since the beginning of the

17

school year. (T at 146). Ms. Palmisano likewise reported several obvious problems in this domain, including playing cooperatively with other children, making and keeping friends, following rules, and relating experiences and telling stories. (T at 116). The fact that the educators noted obvious problems across this domain, even in the structured and supportive school setting is compelling evidence of a marked limitation in this area. Claimant's father also testified that Claimant has difficulty relating to his siblings, occasionally becoming violent, and has very few friends. (T at 29-30, 31-32).

The ALJ did not adequately reconcile his finding of a less than marked limitation in this domain with the assessments provided by the treating physician and educators. Those assessments, which should have been afforded controlling weight, establish a marked limitation as to this domain.[7]

### 3.    Remand for Calculation of Benefits

In this Circuit, a court may remand solely for calculation of benefits when it finds there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record

---

[7]Plaintiff does not challenge the ALJ's findings with regard to the domains of moving about and manipulating objects or self-care. Concerning health and physical well-being, Plaintiff contends that the ALJ erred and points to Dr. Kore's April 2010 assessment, in which the treating physician noted both "no limitation" and a "marked" limitation. (T at 297-98). Dr. Kore did not provide any explanation for his decision, so it is difficult to determine which of the two choices was intended. However, even if Dr. Kore's opinion is read as assessing a marked limitation, substantial evidence supports a finding of less than a marked limitation as to health and physical well-being. Ms. Williams noted no limitations in this domain and reported that Claimant did not frequently miss school due to illness. (T at 149). Ms. Palmisano noted that Claimant missed school frequently during first grade, but for relatively routine reasons, i.e. "colds, ear infections, and pneumonia." (T at 120). Dr. Kore's treatment notes generally indicated routine pediatric treatment (aside from ADHD). (T at 237-48). As such, this Court finds no reversible error with regard to the ALJ's analysis in this particular domain.

"compel[s] but one conclusion under the ... substantial evidence standard."); <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

This Court concludes that remand to the Commissioner for further proceedings would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay. Specifically, this Court finds that the record contains persuasive proof of Claimant's marked limitation of functioning in at least two of the domains identified under 20 C.F.R. § 416.926a. For the reasons set forth above, this Court finds that the evidence compels but one conclusion under the substantial evidence standard, namely, that Claimant also has a marked limitation with respect to acquiring and using information, attending and completing tasks, and interacting and relating with others. In particular, the reports of Claimant's treating physician, educational records (including questionnaires completed by Claimant's teachers), and the opinion of Dr. Barry, the consultative examiner, demonstrated significant problems in these domains of function, which problems required intensive support and which persisted even in structured settings.

Plaintiff's application for benefits on behalf of Claimant had been pending for more than three years when this case was filed. Delay "is harmful for any litigant, but particularly in connection with benefits for children, which are not to replace lost income, but to enable low-income families to afford special education, medical treatment, physical rehabilitation, early intervention services, and personal needs assistance for the child." <u>Nieves ex rel. Nieves v. Barnhart</u>, No. 02 Civ.9207, 2004 WL 2569488, at *10 (S.D.N.Y. November 12,

2004) (citing <u>Maldonado v. Apfel</u>, 55 F.Supp.2d 296, 297-98 (S.D.N.Y.1999)). In fact, "[t]he purpose of providing SSI benefits to children is to assist them while they are children." <u>Molina v. Barnhart</u>, No. 00 CIV. 9522, 2002 WL 377529, at *10 (S.D.N.Y. March 11, 2002).

Accordingly, further delay is not warranted and it is recommended that a remand be ordered solely for the calculation of benefits.


## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's Motion for Judgment on the Pleadings be granted, that the Commissioner's Motion for Judgment on the Pleadings be denied, the decision of the Commissioner be reversed, and this case be remanded to the Commissioner for calculation of benefits.

Respectfully submitted,


Victor E. Bianchini
United States Magistrate Judge


Dated: December 6, 2012

Syracuse, New York


## V. ORDERS

20

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

December 6, 2012

Victor E. Bianchini
United States Magistrate Judge